Mr. Winter. Yes, good morning, Your Honors. I am Gus Winter of the Nashville Tennessee Bar. I represent Luckey Capital Management. The trial court committed error when it dismissed Luckey's legal malpractice claim against Miller & Martin in the course of its ruling on a Miller & Martin through an assignment from Miller & Martin's client, Envileo. The trial court concluded that the legal malpractice claim arose out of a fraud committed against the signer, Envileo, and accordingly held that the assignment of the legal malpractice claim therefore was invalid pursuant to Georgia Statute 44.12.24. The trial court was wrong about this. What Luckey set forth in its first amended complaint was a legal malpractice claim against Miller & Martin that sounded in negligence, not fraud. Specifically, Luckey alleged that the Miller & Martin lawyers knew or should have known that Envileo's managing member, Jeff Ritchie, was stealing money from the company. Before you go further, let me ask you a question. This case was disposed of on summary judgment. The last surviving claim, yes. Excuse me, motion to dismiss. Yes. This case. The complaint attached all sorts of evidentiary exhibits and the motion to dismiss attached and reflected on evidentiary exhibits. It looked to me as if either it was a judgment on the pleadings or a summary judgment, but nobody has objected to the court's The defendants, by moving for summary judgment, you leave it in that posture, admit the truth of everything that is in the complaint, except for the legal conclusions. Yes, Your Honor. I believe that is the case. I believe under Georgia law, and I understand we are in federal court under the federal rules of civil procedure, Georgia law requires an affidavit of an expert witness to be filed with the complaint alleging legal malpractice. So out of an abundance of caution, we included that. I understand. But nevertheless, it is an evidentiary exhibit. Yes, it is, Your Honor. The point I was making is the allegation of legal malpractice set forth in the First Amendment complaint and it is reinforced by the affidavit from the expert witness, Mr. Scott, is that Miller and Martin knew or should have known that Mr. Ritchie was stealing money. It failed to report this information to its client, Envaleo, and it also executed a loan document which had the effect of encouraging Mr. Ritchie to steal further funds from Envaleo that Lucky was investing in the company. Georgia law makes a distinction between the negligence of the attorneys, Miller and Martin, and the fraud committed by the managing member, Jeff Ritchie. That distinction makes all the difference in the present case. The controlling Georgia decision on this issue is the case of Villanueva v. First American Title Insurance Company. Very similar facts. In Villanueva, the Georgia Supreme Court dealt with a case where a third party committed a fraud against the defendant attorney's client. The fraud succeeded due to the negligence of the attorney. The lawyer's client then assigned that legal malpractice claim which was pursued by the assignee. And the claim was he didn't pay the client. The claim was what? He didn't pay the client. Well, the Georgia Supreme Court... He didn't pay the insurance... Yes, that's correct. He didn't pay off the mortgage, period. That's all they said in Villanueva. Well, I believe, as I understand, not only the Supreme Court's opinion, but the appellate court's opinion, which was affirmed, that the lawyer had dropped the ball in allowing this fraud to succeed. Succeed because a non-lawyer person was given the opportunity to handle the funds and was not taking care of making sure that the law firm didn't make sure that its employee did what he was supposed to do. That's correct, Your Honor. That was Mr. Allen, I think it was. I'm sorry? Mr. Allen. Yes. So, Your Honor, what we have is where the Georgia Supreme Court upheld the assignment of the legal malpractice claim because the assigned claim sounded in negligence... And it wasn't he didn't make the payment. That's what the court said. Yes. Let me tell you why I think what's troublesome about this area of the law and why the Supreme Court would not countenance this claim. When you assign a claim like this one to a third party, the third party effectively puts on a show. You take the law firm and the lawyers and you take whoever was the victim and all this conversation takes place and the party filing the lawsuit doesn't have any evidence at all. So the kind of a case of Villanueva with countenance, a malpractice case, in my judgment, you don't have any problem of reenacting the long history between the law firm and the client and the information needed to say that there was malpractice here. All you need is the fact. The lawyer didn't file a lawsuit and let the time run. You don't need to worry at all about, put on the testimony of the client. It's just a kind of a mechanical thing and that's what it was as I see it in Villanueva. It was just a mechanical proposition. He didn't pay, satisfy the mortgages and therefore he was guilty of malpractice. Yes, and the point I'm trying to make and the link, and this is my point, the connection between the Villanueva case and the present case is that the Georgia Supreme Court held that the fraud committed by the third party in the Villanueva case did not invalidate the assignment. And that's exactly the point I'm making in this case where the fraud of the managing the malpractice claim that the client and Vallejo assigned to Lucky. That's my point. The trial court also committed error when it dismissed the fraudulent concealment, the alternative fraudulent concealment plan. That's all part of the malpractice. All of it comes out, all of it comes out of the so-called malpractice. No, Your Honor, that's not correct. It comes out of the professional relationship between the law firm and Vallejo. It does, but it's not part of the legal malpractice claim. If it was, if it was fraud and a fraudulent concealment, that would be prohibited under the Georgia statute for fraudulent concealment. Well, and the policy underpinning the statute in this rule is that to have a lawsuit in which the assignee has no role really. The assignee has to put on the play what transpired between the lawyer and the client. All these conversations. Yes, that's correct. And that's what Lucky was prepared to do. But there is . . . One possible answer to that conundrum that Judge Choflat points to is that Lucky was a member of the client. Yes. That Lucky is not a traditional outside assignee. And at the time of these alleged events and acts, Lucky was a member of N. Vallejo by virtue of its investment. So it was on the inside, not the outside. Yes, Your Honor. And I think that's a very valid point. I was just coming to that. Part of that depends on what Florida law provides for, at that time, for a limited liability company. Well . . . That law has all been repealed in Florida. Georgia. Yes, it has, Your Honor. Or it's been amended to prohibit . . . Before that, a member was like a stockholder, so there's no relationship between the lawyer and the stockholder. Well, in this case, there was, and Judge Jordan was touching upon the relationship because . . . Well, I know they drew the agreement. And more than that, Lucky, as a member, was entitled to be informed of the fraud committed by Ritchie. It's undisputed, even the defendant agrees, that Miller & Martin, as a fiduciary, had an obligation to inform its client of this breach of fiduciary duty by Ritchie. It made no sense to inform the two parties, Poole, the COO, and Ritchie, because they already knew they were participating. The obligation was to inform Lucky as the next highest authority. And that's where Rule 1.13 of the Rules of Professional Conduct come in. I see my time is up. Mr. Mock. Thank you, Your Honor. I want to go first to the question that Judge Toflatt asked Mr. Winner about the procedural posture. We had a motion to dismiss filed in the case which was granted as to three counts of the complaint. The court left a count in the complaint that went into discovery that was aiding and abetting breach of fiduciary duty count. That went into discovery for about eight months. We took depositions from Knoxville to Midland, Texas. And we'll talk about the undisputed facts in just a moment. But I want to go straight to Villanova. So they have to be undisputed facts? Yes, sir. Because we're on motion to dismiss. Yes, sir. On the motion to dismiss part, we're talking about the allegations. And on the summary judgment, we're talking about undisputed material facts. I understand. So the court dismissed the legal malpractice claim, which was based on this assignment. This assignment occurred in the state of Texas between Invaleo, a Florida company, and Lucky, a Texas company. And at the time of the assignment, no one was thinking about the state of Georgia. But the reason this case was filed in Georgia is because Tennessee, Texas, and Florida all prohibit the assignment of legal malpractice claims. Georgia does now as well. But at the time that the assignment was actually signed, the statute as it existed at that time did not have a per se violation or a per se prohibition on the assignment of legal malpractice claims. However, what the statute did prohibit was the assignment of causes of actions for injuries arising from fraud to the assigner. And that is the language. Can I stop you there? Yes, sir. Whose fraud? M&M's fraud or Richie's fraud? The statute does not specify that, Judge. Your position has been that it was, I read from your red brief, it says, Lucky's legal malpractice claim has a direct causal connection to fraud because the entire basis of the claim is his fraudulent concealment theory. Yes, sir. And then you go on to say also on page 30, it is plain to see Lucky specifically alleges that Miller and Martin committed malpractice by means, underlined or emphasized, of his otherwise alleged fraudulent concealment. So it seems to me your position has been that you focus in on M&M's actions, not Richie's actions. Well, it is a little bit broader than that, Your Honor. I am just based on what you said in your brief. Yes, sir. When you look at the case law that construes the phrase arising from in Georgia, arising from is the language that is used in the statute. That says Courts have equated that to based on. Well, any causal connection or relationship is what the Georgia courts have said, Your Honor. And the allegations in the complaint make it clear that they, on the First Amendment complaint, that that is exactly what they were saying. So what Judge Cohen did is he looked at the allegations in the First Amendment complaint and the First Amendment complaint is replete with allegations of fraud on behalf of Richie as well as McClellan. Where in count one is there a single word that talks about fraud? It talks about fraudulent concealment, Your Honor. Not in count one. Look at count one. Well, Your Honor, in response to our motion to dismiss in their brief, this is what Lucky said about their count for legal malpractice. They said, The gravamen of the legal malpractice claim presented in the First Amendment complaint is that the law firm learned that Jeff Richie, the managing member of its client Invaleo, was misappropriating the membership interest purchase monies that Lucky was investing in Invaleo and that Miller and Martin concealed this information from Invaleo and aided and abetted Richie in this endeavor. That's the complaint. But there's no, I'm looking at count one, I don't see a single word about fraud, including the affidavit, Mr. Scott's affidavit. It speaks in terms of intentional or unintentional, new or should have known, negligence, lack of care, et cetera, et cetera. I don't see a single word in count one or a reallocation of a claim in another part of the amended complaint that suggests that M&M did anything fraudulent. If you look at the two paragraphs of count one, which would be paragraphs 18 and 19, I agree it's not there, Your Honor. But everywhere else in the complaint, it's over there, it's over and over and over again. Okay. But where in count one is there anything, anything whatsoever that talks about fraud or even by realleging and adopting an allegation someplace else? I agree in those two paragraphs, there's nothing there. In paragraph 18 and 19, there is nothing there. Including the affidavit? That's correct, Your Honor. Okay. I'm sorry. Go ahead, Paul. Doesn't rule nine provide that each claim be alleged separately? And if you're going to adopt facts in another part of the complaint, that you have to reallege them? Well, I think the rule is that the court needs to look at the substance of the pleadings as opposed to just labels that are placed on them. That's a different issue. I'm talking about what facts are alleged in count one. They've either set forth in those two paragraphs or they're adopted by reference to another paragraph. Correct? Well, again, Your Honor. Is that correct? That's how it's done, right? Pursuant to rule nine. Yes, sir. I don't see any of that. Well, in their own brief, when they describe their own legal malpractice claim in response to the motion to dismiss, this is what they said. They said the gravamen of it was my client's concealment of this defalcation by Mr. Ritchie. So the court looks at the substance of these allegations and concluded that this claim was based on fraud. But there's nothing, Your Honor, there's nothing that says that it has to be based on my client's fraud. What the statute says is that it is for injuries arising from fraud to the assigner. The assigner here is M. Vallejo. The court looked at what the injuries were and interpreted this statute to mean that this claim was arising from, or that this was for injuries arising from fraud to M.  Mr. Knox, let me go back to your statement. The statement you just said that you attribute to the appellant, Lucky? Yes, sir. Is that in reference to the malpractice claim or is that in reference to the fraudulent concealment claim which was dismissed? That was in reference to the malpractice claim. Again, if I could just quote part of this very briefly. The gravamen of the legal malpractice claim presented in the first amended complaint is that the law firm learned that Jeff Ritchie, the managing member of his client M. Vallejo LLC, was misappropriating the membership interest purchase monies that Lucky was investing in M. Vallejo and that Miller and Martin concealed this information from M. Vallejo and aided and abetted Ritchie in this endeavor. Based on that, Your Honor, that's an admission, that is their own interpretation of what they were saying and based on that, Judge Cohen made the correct decision. That's not what Scott affidavit says and that's not what the allegations say. They talk about knew or should have known and should have disclosed it, either because they knew about it or they should have known about it, which is classic negligence. Well, it would still be for injuries arising from fraud to the assigner, Your Honor. Not M&M's fraud. You're talking about Ritchie's fraud now. Well, the statute does not say whose fraud it has to be. It says for injuries arising from fraud to the assigner, the assigner was M. Vallejo. Clearly they have alleged that M. Vallejo, the assigner, has been defrauded. Let me attack it from a different perspective, Mr. Mock, if I could. It may be the case that Lucky thought that M&M had committed actionable fraud, but it at the end of the day, might not have had enough evidence to prove to a jury or to a judge that M&M engaged in actionable fraud. That doesn't mean that Lucky didn't have enough evidence or didn't plead enough facts to allege that M&M committed negligence and the federal rules allow you to plead in the alternative. Maybe not prove in the alternative, but at the very beginning, you can plead in the alternative. You can plead fraud, actionable fraud with intent, or alternatively, negligence. And it seems to me that that's exactly what this complaint is. It alleges actionable fraud in the tort counts, right, the fraudulent concealment, the aiding and abetting and all that. And as Judge Huck indicated, it alleges pure run-of-the-mill attorney negligence on count one. Given that you can plead in the alternative, how in the world does count one not survive? Well, you have to go back again to the language of OCGA 44-1224 that says, if the injury arises from fraud to the assigner, again, the assigner here is in the way. But it doesn't, the claim against M&M for malpractice does not depend on M&M's fraud. So you're saying that any time that a malpractice claim is based on fraud pre-2013, you could not assign it? Yes, sir. And give me one case in Georgia that says that. Well, in fact, there is no case that specifically says that. If that's the case. Nor does Villanueva say that. I'll take that on its face that you are right about both of those points. If that's the case, how can a district judge dismiss as a matter of law a claim on which there is no dispositive interpretation of Georgia law? Because the statute says that if the action is for injuries arising from fraud to the I know what the statute says because you've told us a couple of times. Yes, sir. But you're telling me that there is no legal interpretation in Georgia as to what arising out of fraud means and to whom it refers. If there is no exposition of that phrase in Georgia law, how can you say as a matter of law that count one is barred by Georgia law? There are cases that interpret the phrase arising from. And we've cited those in our brief and it says that almost any causal connection or relationship satisfies the phrase arising from. That's in the insurance context, correct? Well, there is an insurance coverage case. There is another case where they've also used that. But yes, arising from. But both the Villanueva courts have equated arising from to mean based on because that's how they describe it. Well, there's any causal connection or relationship. They use the words, the Villanueva court used the words based on instead of saying arising from. They substituted that with based on. Based on would mean. Isn't that what the Villanueva courts did? I beg your pardon, Your Honor? Isn't that what the Villanueva courts, both of them, did? They used the phrase based on. A claim based on fraud on the asset. Well, what the Villanueva court did not do is it did not. I want to know what they did do. They used the term based on. They did not. They did not interpret this part of the statute. There was no allegation in Villanueva that the claim arose from the fraud of the assigner. The question in Villanueva was whether or not. Let me read for you what they said. Yes, sir. Okay. And I'm just figuring out one thing. It's page 167. And here, the alleged legal malpractice is not based on fraud. Yes, sir. So they equated rising from with based on. And both courts did that. That's the language of the decision. The point I'm trying to make in Villanueva is the issue was whether there was a per se prohibition on the assignment of legal malpractice claims in Georgia. But wasn't there fraud in Villanueva that led to everything? There was theft. There was theft. There was theft. How can that not be fraud? How can a person who is not a lawyer take money from an escrow account and close the account and not engage in fraud? Well, those are the facts, Your Honor. But what I'm trying to say is there was no issue. Tell me how that cannot be actionable fraud. Yes, sir. I'm trying to do that, Your Honor. The issue in Villanueva, there was no argument that that had arose from fraud to the assigner. The issue was whether there was a public policy in the state of Georgia against the assignment of legal malpractice claims and whether there was a per se prohibition against that. The Supreme Court said... The Supreme Court said no. Said no, there isn't. And all this was a suit to collect the money due. Yes. They said there's no per se violation. He was negligent and not paying the money. There was no argument in Villanueva that it had arisen from fraud and therefore... All it had before the court was the failure to pay. That's exactly right. And they had an obligation to pay. That is correct. As a lawyer. That is correct. So it was malpractice. That set of facts... No one argued that that had arisen from fraud. I mean, so the court didn't decide anything else. Anything else the court said was dicta, basically. That's correct. That's correct. This case, Your Honor... If the injury... That's your position. ...arises from fraud to the assigner. That's your position. Yes, sir. It's either or. Yes, sir. And you... There's nothing, at least in the count one, that suggests that what Ritchie did was fraudulent. It was defalcation, misappropriation. In other words, he stole the money. That's not fraud, unlike Mr. Allen in the Villanueva case. Ritchie is accused of taking money he shouldn't have taken. That's not fraud, is it? Well, they allege fraudulent concealment by Ritchie. He didn't... No, no, no. But in that case, isn't that what he did? Isn't that what they say in the count one, the malpractice account, that Ritchie misappropriated, defalcated, took money that he shouldn't have taken? In the First Amendment complaint, yes, Your Honor. And that's not fraud, is it? I believe that is fraud. Well, fraud is a misrepresentation or omission of a material fact, censor, the intent for a person to rely on the misrepresentation, justifiable reliance and damages. I don't see that anywhere. When someone in charge of, you know, the CEO of this or the head guy in the limited liability company took money that he shouldn't have taken, there's nothing that suggests he did it by a fraudulent means. He just did it. He just took the money. Who doesn't? What the judge is saying is you've got to have a representation and reliance on the representation. Well, you can also have fraud by fraudulent concealment. A misrepresentation is not always... You have to have a misrepresentation and a reliance that is not unreasonable. Yes, but you can have fraudulent concealment. I understand that, but who... If Ritchie committed a fraud, who was the victim? To whom did he make a representation and who relied on it? I'm not sure that we have that type of fraud in this Alias to Misdemeanor case. All right, so it's nothing more than theft. Well, we would say fraudulent concealment, but my time is up. Can I ask you one quick question? Yes, sir. Can I just ask one question about the last conspiracy count? The judge dismissed that as well because he dismissed the fraudulent concealment case because there was no duty, and he was correct. You have to have the underlying tort to have conspiracy, but isn't the underlying tort the wrongdoing by Ritchie? There is obviously a duty of Ritchie to end Valeo, not to steal the money or not to defraud them. Well, you're correct. You have to have an underlying tort. The court found that there was no underlying tort in this misconspiracy claim. The underlying conspiracy is as a way to hold somebody for somebody else's tort. Yes, sir. That's correct. But he said there was no tort by, there was no fraudulent concealment tort by the law firm, by the law firm, right? Yes, sir. But he didn't talk about the tort committed by Ritchie, which allegedly the law firm participated in and was a co-conspirator. Well, on the fraudulent concealment claim, there first must be a duty, and there was no duty owed by my client, Too Lucky, who was not my client's client. There was no duty from the law firm to end Valeo? No, Too Lucky. Too Lucky. Too Lucky, right. Yes. Okay. But that's not the underlying basis for the conspiracy claim. The underlying basis is Ritchie's wrongful act, whether it was theft, misappropriation or fraud was the basis. And the allegation is that the law firm participated in Lucky's fraudulent activity or theft activity. The allegations were by not informing Lucky that Mr. Ritchie had taken this money, but the court said there was no duty owed by my client to do that in the first place. Okay. Thank you very much. Now we can have a disagreement. Thank you. Mr. Winter. Yes. Just one point. Mr. Winter, let me, some of this problem, I think, is because the nature of your pleadings or whoever did the pleadings in the, it's not a shotgun pleading. It's just the opposite of a shotgun pleading. You've got all these allegations in the front part of the complaint, then you go to count one. There's not a single re-alleging of anything that preceded it or anything that comes after count one. And I think that is probably some of the reason why there was this confusion as to what exactly was being pled, particularly with regard to fraud, because there are allegations brought out there. But in my view, they're not in count one. I agree with you on that. But I think, I see where some of this problem came about. Well, yes, Your Honor, and the buck stops here in terms of the drafting of the pleadings. And if they were confusing and confusing to the trial court, that's certainly on me. But I believe this Court certainly understands that in a response to a Rule 12b6 motion, the pleading party is entitled to every inference and favorable construction of the allegations presented in the complaint. And as Your Honor stated, count one, paragraphs 18 and 19, set forth a pretty garden variety negligence claim. And the one point I would like to make, and to follow up on Your Honor's last questions to Mr. Mock about conspiracy, Your Honor is right that there is an allegation on the conspiracy that the substantive acts, setting aside completely for the moment, for the sake of argument, the fraudulent concealment claim against Miller and Martin, but Ritchie's conspiracy, his participation by Miller and Martin, which defense counsel did not address, is the drafting of the loan document which gave camouflage and cover and served to conceal and protect this ongoing Well, for a conspiracy, the law firm has to understand what Ritchie is about. Ritchie is the one committing the tort. Yes, Your Honor, and we submit that there are facts Vicarious liability theory. Yes, I mean, joint and several liabilities. Put somebody in because they went along with it. Yes, and we submit that there are in the material submitted in response to the summary judgment motion What you should have done when you saw the summary judgment motion or the response, actually it was the motion to dismiss in the memorandum, you should have moved for leave to amend your complaint. It would have cured the problem that Judge Huck just mentioned. Perhaps so, Your Honor. It's almost impossible for a district judge to decide a motion to dismiss by looking at the complaint, the motion to dismiss, and a response. Then what is the pleading? I understand, but at any rate, I submit that we have raised genuine disputes of material fact as to Miller and Martin's knowledge of these defalcations by Mr. Ritchie. Thank you. We'll move to the third case.